IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GARY P. GREENE,  :
    Plaintiff,  :
  :
vs.  :    CIVIL ACTION 16-0215-WS-MU
  :
SGT. RICHARD, *et al.*,  :
    Defendants.  :
  :

## REPORT AND RECOMMENDATION

Plaintiff Gary P. Greene, proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(a)(2)(R), and is now before the undersigned on the Motion for Summary Judgment of Defendants (Docs. 15, 16). After careful review of the pleadings, and for the reasons set out below, it is recommended that Defendants' Motion for Summary Judgment be **granted**, and Plaintiff Greene's federal claims be **dismissed** with prejudice.

    **I.**    **Summary of Allegations.**

This action arises from Plaintiff Greene's incarceration at the City of Saraland Jail ("Saraland Jail"), where he was housed from approximately February 22, 2016 through March 21, 2016, after pleading guilty to charges of Driving Under the Influence of Alcohol in violation of *Alabama Code* § 32-5A-191 (1975). (*Id*. at 7). Greene alleges in his complaint that, while incarcerated at the Saraland Jail, he was denied medical care and wrongly accused of a criminal

offense in violation of his Eighth[1] and Fourth Amendment rights, respectively. (Doc. 1).

Greene claims that he suffers from a chronic medical condition that requires daily prescription medication. (*Id*. at 5) (Plaintiff Greene fails to specifically identify his chronic illness in his pleadings, but the administered medications contained in the Saraland Jail's medication log indicate Greene requires daily treatment for, namely, hypertension). Greene further contends, at the time he was booked into Saraland Jail, his personal supply of these medications was low. (*Id*.). Consequently, within "a few days" of being housed at the Saraland Jail, he ran out of the essential medication(s) and began to "complain to [Sergeant Richard Williams ("Sgt. Richard")] about his medical condition;" however, Greene claims Sgt. Richard neglected his complaints and failed to provide him with medication. (*Id*.). Consequently, on or about March 6, 2016,[2] Greene claims he became ill due to the lack of medication and was taken

---

[1] The record evidence supports that Greene was serving a 60-day sentence in Saraland Jail for a charge of driving under the influence of alcohol in violation of *Alabama Code* § 32-5A-191 (1975). (Doc. 16 at 4). Thus, as a convicted prisoner, his claim of inadequate medical care falls under the Eighth Amendment's Cruel and Unusual Punishment Clause rather than the Fourteenth Amendment's Due Process Clause. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). "However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Id.*

[2] In his complaint, Greene claims a paramedic team evaluated him on March 3, 2016 (Doc. 1 at 5); however, the records put forth by Defendants maintain that the actual date Greene received emergency care and a medical furlough to obtain hospital treatment was March 6, 2016. (Doc. 16-2 at 5, 87-88). Given the submitted documentation affirming March 6, 2016 as the correct date for the event in question, and the fact that Greene does not dispute Defendants' assertion of this date, the Court will consider and reference March 6, 2016 as the date Greene was transported to the local hospital by ambulance. With that said,

by ambulance to Mobile Infirmary Hospital where he received medical treatment. Upon release from the hospital Greene gave Sgt. Richard a copy of the follow up care instructions from the physician, which included prescribed medication needed to treat his condition, but Greene claims, however, that Sgt. Richard failed to provide the medication. (*Id.*).

Additionally, Greene claims Officer Harry Milbrath wrongly charged him with Second Degree Escape, in violation of the Fourth Amendment, for failing to return from a medical furlough to the Saraland Jail on March 17, 2016. (*Id.*). According to Greene, he was granted furlough to seek medical treatment on March 16, 2016 and was scheduled to return to the jail on March 17, 2017. (*Id.*). Greene claims that despite returning to the jail on March 17, 2017, Officer Milbrath unconstitutionally charged him with Second Degree Escape on March 18, 2017. (*Id.*). As a result of the charges, a warrant was issued for Greene's arrest, and he was arrested for Second Degree Escape and transferred from the Saraland Jail to Mobile County Metro Jail, in Mobile, Alabama, on or about March 21, 2016. (*Id.*).

Greene has filed this § 1983 suit against Defendants Sgt. Richard and Officer Milbrath seeking monetary damages in the amount of $500,000.00. (*Id.* at 8). Defendants have answered the suit, denied liability,[3] and filed a Special

---

whether or not emergency treatment was received on March 3 or March 6 or 2016 is immaterial to the Court's analysis of Greene's claim and does not affect the outcome of the Court's decision of this motion.

[3] In their Answer to this suit, Defendants asserted the affirmative defenses of sovereign and qualified immunity. (Doc. 15). Given that the Court finds Plaintiff Greene has failed to establish a constitutional violation against the defendants, there is no need to discuss the potential immunity defenses in this

3

Report in support of their position. (Docs. 15-16). The Court has converted Defendants' Answer and Special Report to a Motion for Summary Judgment (Doc. 17), and after a thorough review of the Defendants' pleadings and Greene's Response thereto (Doc. 25), the Court finds that Defendants' Motion for Summary Judgment is ripe for consideration.

**II.    Standard of Review.**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d

---

report. *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1774, 167 L. Ed. 2d 686 (2007); *see also Cuvillier v. Rockdale Cnty.*, 390 F.3d 1336, 1338 n.4 (11th Cir. 2004) (explaining that the availability of the qualified immunity defense is "immaterial" when no underlying constitutional violation exists).

265 (1986); s*ee also Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen, supra*, at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'") internal citations omitted); *see Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file.'") (internal quotations and citations omitted).

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses [*7] relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

5

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L.Ed.2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Comer*, *supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether Defendants are entitled to summary judgment in this action, the undersigned has viewed the facts in the light most favorable to Plaintiff Greene. *Comer*, *supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski*, *supra*, 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that

6

could be made based upon the materials before it on summary judgment." *Resolution Trust Corp.*, *supra*, 43 F.3d at 599.

**III.  Discussion.**

**A.  Denial of Medical Care.**

As discussed previously, Greene alleges he was denied medical care by Sgt. Richard during the time he was incarcerated at the Saraland Jail in violation of the Eighth Amendment. The Eighth Amendment prohibits indifference to a convicted prisoner's serious medical needs so deliberate that it "constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). "To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *McDaniels v. Lee*, 405 Fed. App'x 456, 458 (11th Cir. 2010) (citing *Mann v. TaserInt'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009)).

To satisfy the first objective element, Greene must prove his condition was, in fact, a serious medical need. "A 'serious medical need' is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir.2010) (internal quotations omitted).

"To satisfy the subjective element of [a] deliberate indifference [claim, a] . . . Plaintiff must prove three subparts: (1) subjective knowledge of a risk of serious

7

harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (internal quotations omitted) (noting that subjective knowledge requires that defendant "'must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* [ ] must also draw the inference'")(quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811, (1994)); *see also Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010). "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999).

For the sake of this analysis, the Court will assume without concluding that Greene's "chronic medical condition," presumably hypertension, constitutes a serious medical need, which, if left untreated, would pose a substantial risk of serious medical harm. *Farrow*, 320 F.3d 1235, 1243.

Turning to the second element, it is undisputed that Greene required medical attention while at Saraland Jail. However, Defendants contend and the record supports that Greene did receive medical care while incarcerated, *cf., Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (When an inmate has received medical care, courts are reluctant to find deliberate indifference.), and further medical care was available to Greene when needed through the standard practice of medical furloughs.

8

In support of its Motion for Summary Judgment, Defendants submit that the Saraland Jail provides medical treatment for its inmates in four basic manners. First, emergency medical needs are meet by ambulance services or other emergency medical services to deliver on site and immediate treatment. (Doc. 16-2 at 2). Second, over-the-counter medications are administered to inmates by the police department and jail personnel after the execution of a medication release form. (*Id*.). Third, inmates may provide the police department with prescription medications and the jail personnel will administer the medication as prescribed. (*Id*.). Lastly, inmates may request a medical furlough for a period of twelve hours, during which time they are released from the Saraland Jail to seek all forms of medical attention, including hospitalization, specialized care, and the opportunity to refill prescription medication.[4] (*Id*. at 3). During his approximately one-month incarceration in the Saraland Jail, Greene received medical care by all four of these approaches.

First, Greene affirms that after being without his prescription medication for a few days, he began "to complain" to Sgt. Richard. Although Greene fails to articulate in his complaint any specific symptom he was experiencing as a result of being without his medication, the complaints were clearly serious enough that the paramedics were called to Saraland Jail to evaluate Greene on March 6, 2016. The emergency medical responders determined that Greene's blood

---

[4] "To the extent an inmate needs to refill his prescription medication, seek more specialized medical care beyond the capabilities of first responders, or otherwise be admitted to the care of a hospital or medical provider, the Saraland Police Department and Jail personnel are authorized to temporarily release an inmate to do so. . . ." per a Standing Municipal Court Order. (Doc. 16 at 5-6).

9

pressure was elevated, and Greene was transported to the hospital via ambulance by the paramedics for medical treatment. (Doc. 1 at 5).

Second, Greene received over-the-counter medications (including Ibuprofen, Aspirin, and antacids) for complaints of headaches and stomach pain no less than thirteen (13) times between February 22 and March 21, 2016. (*See* Doc. 16-2 at 71-80).

Third, Greene was administered prescription medications, including Metoprolol (to treat angina and hypertension), Clonidine (to treat hypertension), and Atorvastatin (to lower cholesterol). It appears from the submitted medication log that Greene was to take Metoprolol and Clonidine, twice and day, and Atorvastatin, once a day.[5] (Doc. 16-2 at 71-76). According to the log report, during the 29 days Greene was incarcerated at the Saraland Jail, he regularly received Astrovastatin (missing only 7 days total and never back-to-back days). (*Id*.). Also, there were only four (4) days where no medication was administered to Greene. However, the Court will look more closely at the administration record of the hypertension related medications, as potential success of Greene's claim seems to reside there. Referenced below is a description of the administration of Metoprolol and Clonidine:

---

[5] At the time Greene entered the Saraland Jail, he was prescribed Omeprazole to reduce stomach acid. (Doc. 16-2 at 75-76). This medication was administered twice a day from February 21 to February 25, 2016. (*Id*.). The medication log indicates, however, that a prescription change occurred on or around February 27, 2016, when Greene received his first medical furlough. (*Id*. at 80-83). After February 27, 2016, the administration of Omeprazole completely ceased and Atorvastatin was noted as being taken only once a day, in the evening. (*Id*. at 71-76).

- On 8 days Greene received full doses of his hypertension medication (4 pills total);

- On 3 days Greene received partial doses (three of his four pills);

- On 7 days Greene received a single does of each medication (two of his four pills);

- On 2 days Greene received only a single dose of Clonidine;

- On 9 days Greene received no hypertension medication.

Lastly, Greene requested and was approved for four medical furloughs while incarcerated at Saraland Jail.  On February 27, 2016, Greene was granted medical furlough leave to seek treatment for complaints of stomach pain; on February 29, 2016, he was granted leave to obtain medication; on March 6, 2016, he was released into the care of the paramedics for to receive treatment at the hospital for high blood pressure; and on March 16, 2016, Greene was again granted furlough leave to seek medical care.  (Doc. 16-2 at 80-91).

As discussed above, Greene must prove that Defendant Sgt. Richard acted with deliberate indifference in denying him medication in order to establish a constitutional claim against him.  Deliberate indifference, however, is an onerous standard, and the law is clear, missed doses of medication alone are not *prima facie* evidence of deliberate indifference.  See *Zentmyer v. Kendall Cnty.*, 220 F.3d 805, 812 (7th Cir. 2000); *Mahan v. Plymouth Cnty. House of Corrs.,* 64 F.3d 14, 18 (1st Cir. 1995) (Failure to administer prescription medication did not constitute deliberate indifference absent evidence that prison officials knew the plaintiff would suffer serious medical consequences without medication);

*McDaniels v. Lee*, 2009 U.S. Dist. LEXIS 120366 (S.D. Ga. Oct. 27, 2009) (37 days of missed medication did not constitute detrimental delay or deliberate indifference), *but cf., Duncan v. Corr. Med. Servs.*, 451 F. App'x 901, 902 (11th Cir. 2012)(summary judgment denied where record supported the plaintiff's claim that he was without the following heart and stomach medications, Zocor for 22 days, nitroglycerin for 210 days, lisinopril for 46 days, and Protonix for 60 days, and suffered pain and discomfort and was rushed to the hospital on five occasions.).

In *Williams v. Arnold*, the Eleventh Circuit, considered a deliberate indifference claim where a prisoner's medical regimen (like Greene's) consisted of multiple prescription medications that he took several times a day. *Williams v. Arnold*, 207 F. App'x 980 (11th Cir. 2006). Evidence showed that the inmate missed medication due to the failure of the jail staff to refill his prescriptions. The longest time the inmate went without his medication was one seven-day-period, and during that time he received a physician's care and suffered no lasting physical harm from the delay. The Court found no evidence of deliberate indifference, noting that although the jail was the cause of the delays and missed medicines, "the jail's overall effort in keeping up with [plaintiff's] four prescriptions and its response to his request to see a doctor when problems arose was reasonable." *Id*. at 985. Correspondingly, the evidence before the undersigned does not establish deliberate indifference, as Greene cannot show that Sgt. Richard denied him medical care or that he suffered any actual injury from the delay in receiving his medicine.

While a clear refusal to administer heart related medication could rise to a constitutional level in some circumstances, here it does not. No doubt Greene was without hypertension medication for 8 days, from February 26, 2016 through March 7, 2016; however, the record reveals that Greene had ample access to medical treatment during these eight days, including over-the-counter medicines, emergency care, and furlough leave to personally attend to his medical needs. In fact, not only did Greene have access to such medical care, he availed himself of it. The record evidences the day after Greene ran out of his medication, February 27, 2016, he was granted a furlough to seek medical care. Two days later, on February 29, 2016, Greene was again allowed to leave on furlough for the purpose of refilling or obtaining medication. Although the record reflects that Greene remained without medicine after returning from his furlough, it was not due to a denial of access, but rather to Greene's failure to obtain the medication or refill. Additionally, Green received prompt emergency care on March 6, 2016 after becoming symptomatic due to the lack of medication. (Doc. 16-2 at 80-91).

There are no facts to suggest, and Greene does not claim, that he was ever prohibited from refilling his prescription medication or seeking medical care while incarcerated. Nor does Greene dispute any of Defendants' assertions as to the ease of obtaining medical care while incarcerated. Consequently, the record shows, Greene undoubtedly received and had access to medical care while incarcerated at the Saraland Jail, and it cannot be said that Sgt. Richard was deliberately indifferent to Greene's medical needs. *See Bettis v. Meeks*, 2016 U.S. Dist. LEXIS 162581, *13 (M.D. Ala. Nov. 21, 2016)(Plaintiff must establish

"'not merely [that Defendant had] knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or delay in [the acknowledged necessary] treatment.'")(quoting *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir. 1989); *Duncan v. Corr. Med. Servs.*, 451 F. App'x 901, 905 (11th Cir. 2012) (Courts are "reluctant to consider a claim of deliberate indifference where [defendants] promptly respond[] to any medical emergencies that [the plaintiff] suffered."). Additionally, any claim that Plaintiff may attempt to assert related to a delay in receiving medicine or medical treatment would also fail, as Plaintiff does not allege any detrimental effect. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) (Plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. . . . Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.) (internal citations omitted) (footnotes omitted).

Taking Plaintiff's version of the facts as true, the undersigned finds no evidence of a constitutional violation,[6] and it is recommended that summary judgment be granted in favor of Defendant Sgt. Richard.

---

[6] The undersigned finds no evidence in this action that the use or practice of a prison medical furlough policy violates the constitutional standard put forth above. *See Theurich v. Kitsap Cnty.*, 2016 U.S. Dist. LEXIS 60001 (W.D. Wash. May 5, 2016)(Jail's medical furlough policy for non-emergent care was constitutionally sufficient as administered); *but cf., Cooper v. City of Cottage*

14

### B. Wrongful Criminal Charges.

Greene also alleges in his complaint that, in violation of his Fourth Amendment rights, Officer Harry Milbrath "wrongfully charged" him with Second Degree Escape after failing to return from a medical furlough within the allotted and approved time period. Based on a thorough review of the pleadings, the Court determines this claim is not actionable in a § 1983 suit and further finds the claim is meritless.

The record reveals, on March 16, 2016, Greene was granted his fourth medical furlough. (Doc. 16-2 at 89-91). Before leaving Saraland Jail, Greene and his escort, Mr. J.A. Knowles, acknowledged on the standard leave form that Greene was being released from the jail "for twelve (12) hours . . . to seek immediate medical attention." (*Id*.). Greene further acknowledged that "[i]f for any reason [he was] unable to return to the City of Saraland Jail within twelve (12) hours, [he would] call and obtain approval from the police department to an extension of [his] leave due to continuing medical treatment" and that failure to "report back to the City of Saraland Jail within twelve (12) hours . . . " would result in criminal charges being filed against him, "including possible charges for Escape, Bail Jumping or Hindering Prosecution." (*Id*. at 89). Greene was due to return to the Saraland Jail from his furlough by 12:00 a.m. on March 17, 2016.

---

*Grove*, 2014 U.S. Dist. LEXIS 116359, 2014 WL 4187557 (Dist. of Oregon Aug. 21, 2014) (Small jail's use of medical furloughs and paramedics was found to be unconstitutionally deficient medical care in action where heroin addicted inmate received furlough but used the opportunity to inject drugs rather than obtain medical treatment. While jailed, the inmate lost 60 pounds in 9 days, was vomiting blood, and was advised by paramedics to seek hospitalization if symptoms continued. Instead, inmate died of aspiration pneumonia in the jail's care, having never been seen or evaluated by a medical professional.).

(Docs. 16-2 at 5; 16-3 at 2). Officer Milbrath and Sgt. Richard affirm that at 7:00 a.m. on March 17, 2016, Greene had yet to return to the Saraland Jail. (*Id*.). Sgt. Richard contends that he attempted several times to make contact with Greene at the telephone number provided on the medical furlough escort form, but received no answer. (Doc. 16-2 at 5).

At approximately 11:30 a.m., Greene's niece contacted the Saraland Police Department and Jail via telephone and spoke with Sgt. Richard and Officer Milbrath (on speaker phone). (Doc. 16-2 at 6; Doc. 16-3 at 2). Sgt. Richard and Officer Milbrath also spoke with Greene at that time and advised him "that if he did not return to the Saraland Jail by 1:00 p.m. on March 17, 2016, Officer Milbrath would proceed with filing charges against the Greene for Escape." (Doc. 16-2 at 6). The record reflects that as of 1:30 p.m. of March 17, 2016, Greene had not returned to the Saraland Jail or contacted the Saraland Police Department, and Officer Milbrath commenced the filing of the Alabama Uniform Incident/Offense Report at 1:40 p.m. on March 17, 2016. (Doc. 16-3 at 2-10). Defendants submit that Greene returned to the Saraland Jail, intoxicated, at approximately 5:30 p.m. on March 17, 2016. (Doc. 16-4 at 3). Notably, Greene does not dispute the record or the affirmed statements of Defendants Milbrath and Sgt. Richard. (Doc. 25 at 6). Instead, Greene merely presents the conclusory allegation that he returned to the Saraland Jail, at an undisclosed time, on March 17, 2016. (*See* Docs. 1 and 25).

The record further demonstrates that subsequent to the Offense Report filed by Officer Milbrath on March 17, 2016, an arrest warrant was issued for

Greene by the District Court of Mobile County on March 18, 2016 for the charge of Second Degree Escape in violation of § 13A-010-032 of the *Code of Alabama*. (Doc. 16-4 at 4-5). Greene pleaded guilty to the charge on April 21, 2016, and was sentenced to fifteen (15) years, split to serve one hundred twenty (120) days in Mobile County Metro Jail, with the balance of the sentence suspended for three (3) years of probation. (Doc. 16-5 at 2-8, 11-13).

Greene's claim, that Officer Milbrath wrongly charged him with Second Degree Escape after returning to the Saraland Jail on March 17, 2016 from his approved medical furlough, is essentially an attack on his conviction and/or sentence for Second Degree Escape. *See Abella v. Rubino*, 63 F.3d 1063, 1065-66 (11th Cir. 1995) ("[A] 42 U.S.C. § 1983 damages action which would demonstrate the invalidity of a conviction or sentence does not accrue until the conviction or sentence has been invalidated. . . . Such an action, if brought prior to invalidation of the conviction or sentence challenged, must therefore be dismissed as premature.") (internal citations omitted). Accordingly, judgment in favor of Greene in this action "would necessarily imply the invalidity of his conviction" and is, therefore, not a § 1983 suit, *Heck v. Humphrey*, 512 U.S. 477, 481 (1994), and is only actionable through a properly plead habeas corpus action. Therefore, Greene's sole remedy to his claim is a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier

release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

Additionally, the record, as discussed above, evidences that Greene's claim is meritless. The record plainly demonstrations that Greene violated the terms of his medical furlough by returning well after the expiration of his designated furlough leave period. Greene has failed to "show the existence of a genuine issue . . . [of] material fact" on this issue. *Fitzpatrick,* 2 F.3d at 1116. As such, "no rational trier of fact" could find for Greene, *Matsushita Elec. Indus. Co., Ltd.,* 475 U.S. at 587, and Defendant Officer Milbrath is, thus, entitled to summary judgment on this claim.

## IV. Conclusion.

Based on the foregoing reasons, it is recommended that Defendants' Motion for Summary Judgment be granted, and Plaintiff Greene's claims be dismissed with prejudice.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1)

waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 5th day of June, 2017.

<u>s/P. BRADLEY MURRAY</u>
**UNITED STATES MAGISTRATE JUDGE**